Good morning. I'll try to help you watch your time, but it's really kind of up to you. And so how much time would you like to reserve? Your Honor, I believe the majority of my time I'll be able to reserve. Most of the issues I feel like were fairly well fleshed out in the briefing in this case. And so most of what I'm here to do is to answer any questions that any of you have and highlight some of the key aspects of what we think are important to our appeal. Well, let's see how it goes here then. Go ahead and proceed. Thank you very much, and may it please the Court. My name is Sarah Knowles. I'm here on behalf of Appellant Titus Striplin. First, Mr. Striplin was a very hardworking salesman for a company with good history with the company, a solid background, and once he began to have issues with a particular practice that the company was participating in and raising concerns with the legality of them doing what he believed to be a violation of a court order in another case and using his name to do that, after he continually raised those issues, the company retaliated against him, began harassing him, began undercutting his sales positions and not providing him with the support that the other salespeople were provided. Thereafter, he suffered a severe amount of stress from both constantly thinking about this issue of the company using him to violate this court order, which he believed to be a very, very severe violation of law, and a result of the retaliatory behavior of the employer. He suffered this severe stress, informed his employer, and within a week of that information coming to light to the employer, he was terminated. Ms. Knowles, let's focus for a minute, if we could, on the retaliation claim, because that's the part of the case where I'm having the most difficulty factually. As I understand it, the protected activity that you contend exists in this case is the fact that his name somehow or his accounts were somehow being used for this Julia Linza. Is that correct? Basically, Your Honor, yes, that's correct. It was his name being used for these other accounts because his understanding was that this prior court order prohibited the company from pursuing certain accounts because of trade secret issues between companies in a prior lawsuit. So we had an injunction that had been issued. It applied to Ms. Linza's husband. It applied to Shamrock. I think the language of it is probably broad enough to include Julia Linza. But so that's the protected activity, as I understand it, that you're contending here. What is the evidence of the third factor that we need to look at for a retaliation claim, which is the causation factor? Your Honor, the causation, we believe, is based on the temporal proximity between when he began complaining about these issues and consistently raising them, the issue of having his name taken off the accounts because they were kind of using him as a front, and the temporal proximity between that and when he was placed on a performance improvement plan and then terminated despite the fact that he was named their top performer just months before he was terminated and put on this performance improvement plan. What's your best case for causation, if you can point us to that, for the temporal proximity? Sure, Your Honor. And if you can't find it, we'll look at what you have in the briefs. I apologize that I'm a little slow on that. That's okay. I do believe that we have a solid case law in there, and there's one other issue that I'd like to – Before you get to the other issue, let's go to the timeline. So, as I understand it, the original complaint that was made by Mr. Stripline was in mid-2012. The argument is – I mean, and I read in the briefing that he continued to complain about this into 2013. He's terminated, I think effective March 22nd of 2013. And then, in the intervening between the complaints and the termination, he's placed on the performance improvement plan on February 6th, 2013. So we've got this performance improvement plan that is in the middle of this temporal timeline. Did he perform in accordance with the terms of the performance improvement plan? Your Honor, it is our position that he performed as he was intended to within the performance improvement plan, that he executed his job duties, he did everything he could to gain accounts. There were issues with his sales numbers, but that was not a result of our client's failure to perform in compliance with the PIP. It was actually him being undercut and accounts being taken away from him, underneath him, and undercutting this performance improvement plan that he was expected to work towards. So are you contending that the performance improvement plan was pretextual, that that was not – that that was all designed to create goals for him that were unachievable and that the real reason they terminated him was because he was complaining about having to do things he thought was illegal under the injunction? Is that the argument? Absolutely, Your Honor. Now, you know we've got a second case, and we're going to get to that. I do, yes, Your Honor. But he's not the only Shamrock employee that was placed on a performance improvement plan. Correct, Your Honor. Were all of the employees in this new office of Shamrock put on performance improvement plans? Not to my knowledge and not on the record, Your Honor. There's no evidence on the record that that happened. In terms of the documents that were excluded by the trial judge, and as I understand it, that's primarily a 50-plus paragraph affidavit of your client. Yes, Your Honor. Anything in – and I looked at it, but I don't remember the details. Is there anything in the exhibits, documents, evidence that was excluded by the trial judge as being untimely that supports your causation argument? Your Honor, I don't – Reconciliation. Our causation, as it relates to the temporal proximity, I do not believe is supported in documentary evidence, Your Honor. The declaration by the client that was filed in support of that I do believe lays out that temporal proximity. But the declaration is a self-serving statement. Do you have any other evidence other than the declaration to support your claim on that? Your Honor, I believe that there is a deposition testimony that supports his claim that he was complaining during the timeline that you've just laid out for us. His deposition testimony? I believe there is, Your Honor, and I can – Or someone else's deposition. I believe it's his deposition. Counsel, Judge Gould, if I could interject a question to you. Yes, of course. Temporal proximity, as I understand it, in some cases can support an inference of causation. But it's just one factor as to whether we should draw that inference. Here, I'd like you to address on substance what he was doing in his job, whether he was making enough sales or opening enough accounts to justify what he was being paid. Sure. To address that, Your Honor, I'd like to draw your attention to the facts that lay out that Mr. Striplin was a top performer at the company. As recently as December of 2012, he was named the top salesperson in December of 2012 before being put on this PIP two months later – actually, about a month later than that. And, Your Honor, I think that that is evidence that this was a pretextual situation because he was a top performer. He had had a history going back to – I believe it was 2008 – showing that he was a strong performer that could bring in sales and maintain accounts and do very good work for his company. Yet, within months of him complaining about this, he was let go. And I realize I'm circling back to the temporal proximity, but I think it's important to recognize that these other factors of him being a strong employee and a strong salesperson for the company show how pretextual it was for them to retaliate against him. If I could just follow up on that, it's my understanding that his supervisor – I guess it's Mr. Turner – who supervised him during this relevant time period indicated that your client had the lowest profit margins on the accounts of the accounts executive in his region. It seems like some – you know, his performance really went downhill after he got the Pechanga Resort and Casino account. It seems like from the record, it says his total invoices for the 2012 calendar year resulted in, I think, $11,000 in gross profit, which is pretty – falls short of the annual base salary, which they look at, and they're expected to do a lot more. So I'm just trying to figure out, what's your response to that? Well, primarily with respect to the reason that we're here, we were before the court on a motion for summary judgment. So I think it's important to recognize that, yes, not all of the facts are agreed here, and that the defense has put forth certain positions with respect to numbers that were required that may have context that needs to be given to them. And there's only so much context I can give you all here today because of what we're limited by the record, but for purposes of a motion for summary judgment, there are certainly facts in dispute we would maintain to evidence that he was a strong performer, that he made complaints, and that as a result of those complaints, he was retaliated against and eventually terminated. Do you want to reserve the balance of your time? I do, Your Honor. Thank you very much. Thank you. Good morning, Your Honors. My name is Kara Massiel. I represent Shamrock Foods Company. This is a straightforward employment discrimination case. We've got an employee where Titleist Stripling failed to demonstrate by providing any facts that would establish to overcome Shamrock's legitimate reason for his termination, namely that he was a poor-performing sales account executive. He was placed on a performance improvement plan. When he failed to perform, he was legitimately terminated. We didn't talk about some of the other issues, but with respect to the protected activity and the wrongful discharge claim, if you want to address that since that was the focus of Your Honor's questions, I'll address a few points to that. First of all, he doesn't establish that he engaged in protected activity because both under wrongful discharge claims and under the Section 1102.5c claim, he has to establish that his concern about the use of his identity amounts to a refusal to participate in illegal activity, and that's not the case here. The district court properly concluded that Stripling never alleged that he was fired because of a constitutional provision or a statutory provision. The district court further concluded that he never alleged or had facts that Shamrock could have violated a court order by using Ms. Linz's name, even if that's occurred and there's nothing in the record that indicated that Ms. Linz's name was improperly used or that Mr. Stripling's name was used on her account. There's absolutely no facts in the record to that. Can violation of a court order be protected activity? I don't believe so, no, Your Honor, because the courts that interpreted it looked at criminal penal statutes, theft, embezzlement, fraud. Here, that would be a civil action, and again, he didn't refuse to participate in an unlawful activity. The record demonstrates that he raised some questions, open-ended questions to his supervisor about why was his name being used on accounts, and he found the behavior odd. The testimony from his deposition never said that he complained that it was illegal, never said that it was unlawful, and therefore he never engaged in protected activity. As a result, those two claims fail to meet his prima facie case, and summary judgment was properly adjudicated. With respect to temporal proximity, I don't want to get too much into that, largely because that's an issue first raised on appeal. The district court correctly noted the causality with respect to the retaliation claim was never addressed in the opposition to summary judgment, and an issue first raised on appeal is not appropriately before this court. Let me just ask you, though, it seems like in his declaration, Mr. Strickland stated he was the highest grossing salesperson in the region, yet we have this other, I don't know if it was testimony or declaration from Mr. Turner that said, you know, he had the lowest profit margins in the region. What do we make of that, and can you explain this discrepancy, please? Your Honor, as a sales account executive, Mr. Strickland was required to open at least two accounts per month. When he failed to do so, he was put on a performance improvement plan, and that performance improvement plan in February 2013 specifically required that he had to open two accounts that ship in the next 30 days. He failed to do that in February of 2013, and he failed to do so in March of 2013. So when they were looking at his orders and realizing that he was not meeting the legitimate sales expectations set forth by his employer, they determined that he was not succeeding, and they processed his termination, and he was the correct, posted the lowest gross profit of any account executive in his region, which is a legitimate reason for his termination. Counsel, if I could ask you a question on that issue. Where does the open two accounts per month or whatever the time is, where does that requirement come from? That comes from Shamrock's business operations and the way that they have determined what they need to do, a sales account executive needs to do at a minimum level in order to be profitable, in order to sustain the amount of salary and benefits and overhead that Shamrock is providing to that employee, as well as in order for them to be profitable. Mr. Striplin was a sales representative, and he needed to reach out to sales and new account representatives, whether from hospitals, hotels, restaurants, to sell food orders, and it's only until those orders ship that Shamrock receives the economic benefit of that sales transactions, which then makes him profitable in his region. Now, was there a written policy that he was aware of on that? Yes, Your Honor. When he was hired and transferred to the Southern California region, he was told that he was expected to open new accounts. That's also in the record. He understood that. He also did understand in 2012 that he was expected to open two to three accounts per month, and then he was specifically informed when he was placed on the performance improvement plan by his supervisor that he was expected to open and ship at least two accounts per month. So he was well on notice of Shamrock's legitimate performance expectations. So how is it that he got an award shortly before being put on the performance improvement plan? If your colleague on the other side is correct in urging that. Respectfully, Your Honor, I don't find that fact in the record. Counsel, I want to go back to the retaliation claim and the protected activity. I thought that in reading the briefs and all of the material that we had, the record in this case, I thought that the parties had conceded that whistleblowing of a violation of a court-ordered injunction constitutes a protected activity. Did I miss something here? Well, Your Honor, I apologize if I think that's conceded. I don't believe it is conceded that he engaged in protected activity. I think the district court found that he did not allege a violation of a statutory or constitutional provision and that, furthermore, that there was no facts in the record that would suggest a violation of a court order ever occurred. Whether a violation of a court order would be sufficient to establish a whistleblower claim is a hypothetical. It's not supported by facts in this record because Shermock didn't violate a court order, nor would there be evidence that it could have violated a court order under the facts of the record. Well, I understand that argument. I understand you're saying that there's inadequate facts to support that there was actually a violation of or there was some protected activity here. My initial question to you was whether or not you agree that violating a court-ordered injunction, not to take somebody else, other clients' accounts, whether or not that constitutes protected activity. Now, whether or not it occurred in this case is a question of fact. Apparently, the lower court sorted it out. So where are we on this? Are you telling me that violation of a court-ordered injunction is not protected activity or that it is, it just wasn't established here? Well, I think there's two prongs to the wrongful discharge whistleblowing claim. There's a statutory whistleblowing claim under Section 1102.5C. And I'm looking at it. Any employer or any person acting on behalf of the employer shall not retaliate against the employee for refusing to participate in an activity that would result in violation of a state or federal statute or a violation of her noncompliance with a state, local, or federal rule or regulation. That's the statute. Yes, Your Honor. And what's the second one? The second one is the wrongful discharge claim. Right. And that requires courts have been cautioned to say in wrongful discharge claims, you can't declare a public policy without a basis in either constitutional or statutory provisions. Let's assume we find a protected activity here. Let's say we get over the hurdle of the first factor. He was terminated. Second factor satisfied. Third factor for a retaliation claim is the causation factor. As Judge Gould pointed out, there's plenty of Ninth Circuit precedent out there that establishes that holds that a temporal connection is sufficient to establish that third factor of causation. We do have a temporal connection here, I think, arguably. Why isn't this an issue of fact that the court should have left for the jury to resolve? Your Honor, I think courts in the Ninth Circuit, while have addressed causality and temporal proximity, they've also said and have rejected a bright-line rule that a particular period is either too long or too short. That's the case of Porter v. California Department of Corrections. Quite simply, temporal proximity alone is not dispositive of causality. There needs to be something more. There needs to be other issues and other evidence of retaliatory motive which is not present here. And Your Honor rightly has the timeline down. The first complaints, if you could call them that, really the times he talked to his supervisors allegedly and asked why was his name on the accounts, occurred in July of 2012. He said on appeal that he made repeated requests about that, although the timing of those are not clear. And his termination ultimately resulted at the end of March, after he had been on a February 9, 2013 performance improvement plan. He failed to perform in March. He failed to perform in February. It was clear he was not going to be meeting Shamrock's satisfactory legitimate performance expectations, and he was justly terminated. So the causality there, the temporal proximity is eight months, which I would submit is very long to submit a temporal proximity causation claim on that alone, and there's simply no other evidence in the record to suggest that there's other facts that would consider causality on the record. And again, Your Honor, respectfully, this issue was first raised on appeal before the Ninth Circuit. It was not litigated or addressed in her opposition before the district court, which is why the district court, in his opinion, properly said causality had not been addressed. Counsel, did your brief object to that issue being addressed by us? Yes, Your Honor, it did. So there was this delay between filing of the supporting documents and the complaint, I guess. I think it's about three hours. And just trying to figure out, how are you prejudiced? Because I think you claimed that you were prejudiced by that and that it was somehow circumventing the page limit. I just am not sure that that's clearly supported by the record, but I'd like to get your view on that at this time. Yes, Your Honor, Shamrock was prejudiced by the late filing of those documents. While understandingly it was three hours from midnight to 3 a.m., it did require additional side documents that were not fully incorporated into the opposition. And as a result, the opposition was very muddled, and it required our attorneys time to focus on what was in that 58-page declaration, which allegations were not even referenced in the opposition, where the sites to the record were appropriately located. And unfortunately, it forced us to deviate from focusing exclusively on a reply brief to other issues. It's also respectfully prejudiced, Shamrock, because we're talking about it here on appeal, and we had to devote some of our appellate briefs to this issue, whereas had the plaintiff had just followed the court's standing order and the court's deadlines, we wouldn't be in this situation. So that's where the prejudice lies. It's in the additional time and legal fees that we've had to be focused on this with respect to litigating and preserving this issue before the district court and on appeal. So if it had been filed at 1159 p.m., your client would not have been prejudiced, but because it was filed at 3 a.m., three hours later, your client was? Is that what you're saying? No, Your Honor. Because it was filed not following the court's local rules or the standing orders. More than just the timing. It is more than the timing, Your Honor. It's the way that the briefs were then done. And respectfully, I understand the excuse of why it was late filed. But counsel fell ill on a Saturday. She easily could have contacted opposing counsel by email, asking for a brief extension. She could have contacted the court on the business day when the court was open on Monday, February 9th. She had all day to do so. She failed to do so. Judge Bernal found that that was not excusable neglect. You review that decision on an abuse of discretion standard, which requires that you have to have a definite and firm conviction that he committed a clear error of judgment, which I don't believe is the record here on appeal. And I ask that you uphold Judge Bernal's decision to exclude the late-filed documents. It does seem a bit draconian to exclude it if it was just three hours late. I understand that, Your Honor. Your client's lawyers were probably not up working on the case between midnight and 3 a.m.? We were not. I will represent that we were not, Your Honor. But we did, again, have to focus additional time that we wouldn't have other had to have done during the limited time we had to draft the reply. And Judge Bernal has the right to— How is that? I guess I'm having trouble understanding how did that affect you? Because the way the documents were filed, they weren't— the facts and the documents in the opposition had no sites to record. So we had to go through the record to figure out exactly what was being cited to. We had to create additional objections to evidence. We had to do additional due diligence in response to the opposition that others would not have had to do, Your Honor, and that's where the prejudice lies. But you're saying that prejudice you would have had if they filed the brief timely at 1159, right? They would have had to file it properly in accordance with the court's standing orders, which requires citation of record to the evidence, filing a proposed order, things of that nature which counsel failed to do. So it was the violation of the court's own standing order that created the prejudice, not necessarily the time delay. I see my time is up. Unless you have any further questions, I'm happy to answer. I have a question. Did the district court, in giving that sanction of excluding it, did the district court say it was because of these factors other than timeliness? He did say in his opinion, Your Honor, that the facts had been muddled by the failing to identify record sites in the evidence, and that was one of his reasons, yes, Your Honor. Then I'm sorry to take you over your time, but if we end up concluding contrary to your argument that the judge should have permitted that filing at 3 a.m., then what happens on the summary judgment? Your Honor, respectfully, even if you were to consider the allegations in the declaration, they still do not meet the necessary burden to establish a triable issue, a genuine issue, a material fact for summary judgment, and summary judgment should still be affirmed on all of the dispositive claims. But if those aren't included, how does that affect? I mean, there's no facts to support. Correct, and it should be affirmed based on Judge Bernal's decision. I just wanted to be clear. Okay, thank you. Does anybody else have any other questions? Thank you. Judge Gould, thank you very much. Thank you for your time. Thank you. I'd like to first address the case with respect to the temporal proximity. Quickly, in our opening brief, I believe it's Yartzoff, Y-A-R-T-Z-O-F-F, versus Thomas is cited at 809 F2D 1371, specifically at 1376. Secondly ---- Well, why does that help you, though? What in that case helps you? Yes, Your Honor. I believe that that case specifically lays out and shows that it does not have to be within days. There can be within months, and that the other factors within the employment can lead into that decision. So that's why I believe that case supports us. Secondly, I'd like to point out that there was a question raised as to whether it is within the record, the fact about our client making the top salesperson in December of 2012. That appears in paragraph 11 of his declaration, which is in the excerpt of the record at page 066. The declaration that was excluded? Yes, Your Honor. Third, I would like to address the issue of whether he sufficiently raised the issues with his employer to rise to the level of complaints. While the defense would like to characterize what he was doing as merely raising the issue, he was continually going to his employer, asking that his name be removed from the documents because he was not okay with being the forefront of this, what he believed to be illegal activity. With respect to the illegal activity, I also believe that the Weingart case, cited actually in the appellee's answer brief at, it's a really long citation because it's Lexis, I apologize, but it's 2012 U.S. District Lexis at 114651. That case specifically lays out that an 1102.5c claim can possibly extend where the employee has a reasonable belief that this is a violation of law, and therefore extending the protections under the whistleblower statutes beyond those that are simply violations of statutes, constitutional provisions, or regulations. Finally, I would like to address the late-filed documents. As the Court and opposing counsel have acknowledged, we would respectfully request that this Court overturn Judge Bernal's decision on that and agree with the Court that this was a draconian method used and ended our client's case as a result of sickness of his counsel. Unfortunately, yes, his counsel came down with a very severe,  and unfortunately her counterpart, me, was out of town and unreachable during that time frame. Things could have been maybe different had I been reached, but I couldn't be reached. And so this all came down to the end of the line. There's only so much evidence on the record for you about that, but I believe that reasonable inferences can be drawn that she was not within her normal state of mind to make the judgment calls. She did not necessarily have access. There's no evidence that she had access to call opposing counsel on a weekend. And by the time it comes to Monday, she's staring down the barrel at two oppositions and trying to accomplish everything and dedicating her time to do that. With you. Thank you. Thank you very much. Any questions? Okay. I don't have any. Thank you. Thank you very much. Thank you both for your arguments here today. The case of Titus Stripland v. Shamrock Foods Company is submitted.
judges: Gould, Murguia, Christensen